UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION IX by the INDE-PENDENT ADMINISTRATOR.

No. 88 CIV. 4486 (DNE).

United States District Court,
S.D. New York.

April 9, 1990.

See also 735 F.Supp. 506.

Otto G. Obermaier, U.S. Atty. for S.D. N.Y. (Edward T. Ferguson, III, Asst. U.S. Atty., of counsel), for U.S.

Charles Carberry, Investigations Officer, New York City (Robert W. Gaffey, of counsel).

Mudge, Rose, Guthrie, Alexander & Ferdon, New York City (Jed S. Rakoff, of counsel), for Intern. Broth. of Teamsters.

Sipser, Weinstock, Harper & Dorn, New York City (Richard Dorn, Jerome Tauber, Susan Martin, Seth Kupferberg, of counsel), for Mario Salvatore.

Richard Dorn, Woodbridge, Conn., for Edward Brereton, Felix DelGuidice and Angelo Chieppo.

Andrew B. Bowman, Westport, Conn., for Joseph M. Roberto.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The remedial provisions in the Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, an Investigations Officer to bring disciplinary charges against IBT members, and an Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and prosecution provisions.

### I. Application IX

The Independent Administrator submitted Application IX for this Court's review on January 22, 1990. Application IX asks this Court to interpret paragraph F.12.(C) ("¶ F.12.(C)"), subsections (c) and (d) of the Consent Decree, which empower the Investigations Officer to take sworn statements in furtherance of his access to information about the IBT.

Numerous members of the IBT have objected in their individual capacities to the notices of sworn statements or in-person examinations served upon them by the In-

vestigations Officer (the "IBT members").[1] These IBT members (1) explicitly deny that they are bound by the Consent Decree; (2) object to the Investigations Officer's authority to take such statements absent his providing them with detailed justifications for his inquiries, and ask that he be required to (a) issue notices of reasonable cause, and/or (b) detail the explicit areas of inquiry before the examination. In addition, still others deny that they are members of the IBT for the purposes of ¶ F.12.(C)(c), but instead agents of the IBT and protected by the more stringent notice requirements at ¶ F.12.(C)(d). The IBT opposes the actions of the Investigations Officer to the extent that they ask that the Investigations Officer issue a short statement of reasonable cause to the examinees. This Court will decide the question of the proper interpretation of ¶ F.12.(C)(c).

### II. Discussion

The arguments by these members of the IBT that they are not bound by the Consent Decree must immediately be dismissed. Both the January 17, 1990 Opinion and Order of this Court, (the "January 17, 1990 Opinion") and the November 2, 1989 Memorandum and Order (the "November 2, 1989 Order"). See January 17, 1989 Opinion, 728 F.Supp. 1032, 1048–57 (S.D.N.Y. 1990); November 2, 1989 Order, 725 F.Supp. 162, 168–69 (S.D.N.Y.1989) conclusively decided this matter. Those orders of this Court are utterly unambiguous.

Second, this Court rejects the contentions of some members that the Investigations Officer need provide them with a written outline of the areas to be covered. Paragraph F.12.(C)(c) makes no such requirement for sworn in-person examinations or sworn affidavits, and none will be implied into that provision of the Consent Decree. Some members argue that such prior notice of subjects is necessary to guarantee effective assistance of counsel as provided for in ¶ F.12.(C)(c). This is a makeweight argument and misleading. The IBT members are entitled to be represented by counsel or

---

**1.** The following IBT members have filed papers in response to Application IX: Mario Salvatore, Joseph Roberto, Edward Brereton, Felix DelGuidice, and Angelo Chieppo.

anyone else of their choosing and no deprivation of this right is intended or effected.

The taking of sworn statements or examinations pursuant to ¶ F.12.(C)(c) by the Investigations Officer has become a subject of disagreement. Paragraph F.12.-(C)(c) specifically empowered the Investigations Officer with authority to:

"take and require sworn statements or sworn in-person examinations of any officer, member, or employee of the IBT provided the Investigations Officer has reasonable cause to take such a statement and provided further that the person receives at least ten (10) days advance notice in writing and also has the legal right to be represented by an IBT member or legal counsel of his or her own choosing, during the course of said investigation." ¶ F.12.(C)(c) Consent Decree, at 12.

The IBT members, and the IBT contend that the Investigations Officer is required to furnish examinees with a reasonable cause statement. This contention is unpersuasive.

The Investigations Officer likens this requirement of reasonable cause for sworn statements or testimony to the procedural formalities observed in both notice of depositions in the civil context, and subpoenas by grand juries. In neither of those contexts, the Investigations Officer argues, does the law place upon the party seeking information the affirmative burden championed by the IBT and the IBT entities. Further, the Investigations Officer compares the Consent Decree to the streamlined process in an arbitration. These comparisons have significant merit.

As with the examples cited by the Investigations Officer, reasonable cause must be viewed in the context of the Consent Decree's remedial scheme. In light of the duties charged to the Investigations Officer, and the objectives ordained by the Consent Decree, the notices sent by him constitute reasonable cause for the purposes of ¶ F.12.(C)(c). Reasonableness dictates that the Investigations Officer's actions must be fit and appropriate to the end in view, that his actions not be extreme, excessive or absurd.

The Government initiated the underlying RICO action for the purposes of ridding the IBT of decades of corruption. Indeed, rooting out the corrupt elements from the IBT is the explicit purpose of the remedial scheme that is the Consent Decree. The Investigations Officer is appointed by this Court and sworn to implement this broad mandate. Given this background of corruption and the explicit reason for the existence of the Investigations Officer, his notices of sworn statements must themselves be considered "reasonable cause" to take sworn statements or examinations for the purposes of ¶ F.12.(C)(c).

To interpret ¶ F.12.(C)(c) in this manner properly effectuates the exact strictures of the Consent Decree, in addition to its spirit and intent. Such a construction infringes no substantive rights of any member.

### III. Conclusion

Accordingly, ¶ F.12.(C)(c) is hereby interpreted in accordance with this order. The Investigations Officer may proceed in a manner consistent herein. Any objections raised by IBT members regarding the Investigations Officer's authority to take sworn statements of them after charges have been filed against them seems to elude any rule of logic. It would appear that the taking of sworn statements after the filing of charges would be in order. In any event, the Investigations Officer is free to consider the matter de novo.

SO ORDERED.