UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION LVIII of the INDEPENDENT ADMINISTRATOR.

No. 88 CIV. 4486 (DNE).

United States District Court,
S.D. New York.

Jan. 20, 1992.

Charles M. Carberry, Investigations Officers of Intern. Broth. of Teamsters.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Edward T. Ferguson, III, Asst. U.S. Atty., of counsel), for U.S.

Samuel J. Pasquarelli, Pittsburgh, Pa., for respondent William Cherilla.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the remedial provisions, the Investigations Officer to bring charges against

corrupt IBT members, and the Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and prosecution provisions.

Application LVIII presents for this Court's review the opinion of the Independent Administrator finding that the Investigations Officer proved one charge filed against IBT member William Cherilla, the Secretary–Treasurer of IBT Local Union 249, located in Pittsburgh, Pennsylvania.

## I. BACKGROUND

The Investigations Officer alleges that Mr. Cherilla violated Article II, section 2(a) and Article XIX, section 6(b)(2) of the IBT Constitution by assaulting George Ogg, an officer of Local 249. Section 2(a) is the IBT membership oath, which provides in relevant part that every IBT member shall "conduct himself or herself in a manner so as not to bring reproach upon the Union ... [and shall] never knowingly harm a fellow member." Section 6(b) is a nonexhaustive list of the disciplinary charges that may be filed against IBT members. Two such charges are violating the IBT oath and "assaulting ... fellow members or officers ... or any similar conduct in, or about Union premises or places used to contact Union business." Article XIX, §§ 6(b)(2), 6(b)(5).

It is undisputed that Ogg and Cherilla were running on opposing slates in a Local Union officer election. Cherilla called Ogg into his office on September 10, 1990, to berate him about forgetting to turn off the air conditioner the previous day. Cherilla and Ogg offer separate accounts of what ensued.

Cherilla contends that Ogg cursed at him, called him stupid and insulted his wife. According to Cherilla, the two then engaged in a pushing match, during which Cherilla pushed Ogg in such a manner that he caused Ogg to fall face first into a

louvered partition wall. Cherilla contends that this ended the confrontation.

Mr. Ogg provides a different account of the September 10 confrontation. Ogg asserts that he never pushed Cherilla, and indeed, that he had a briefcase in one hand and a folder in the other hand when Cherilla confronted him. Ogg contends that when he turned around, Cherilla kicked him in the groin. As Ogg bent over, Cherilla struck him with karate blows and continued to beat him until he fell to the floor and lost consciousness.

As a result of this confrontation, Ogg suffered numerous injuries. At the hospital, twenty-eight sutures were required to close Ogg's wounds. Ogg suffered a fractured orbital bone around the left eye, a fractured nasal bone, a deviated septum and torn cartilage in the nasal area. Ogg also sustained four multiple fractures under his left eye and had to undergo surgery to repair the damaged bones and cartilage in his nose.

The Independent Administrator credited Ogg's version of the facts in part because photographs of Ogg's injuries and the testimony of another Union member, William Sepdy, concerning those injuries rendered Cherilla's version of the events implausible. Furthermore, two office employees who witnessed the incident, Helen Barry and David Winklman, confirmed Ogg's account. The Independent Administrator also noted that Cherilla holds a third-degree black belt in Tae Kwan Do, a form of karate, and that his "office walls are replete with certificates and photographs evidencing his expertise in the martial arts." Ind.Admin.Dec. at 7. Furthermore, the Independent Administrator did not credit Cherilla's testimony or testimony given on Cherilla's behalf.

The Independent Administrator found that:

Cherilla brutally attacked and beat a man who was not capable of defending himself. The issue of the air conditioner and the alleged slur of Cherilla's wife, even if made, simply do not excuse Cher-

illa's violent attack on Ogg. The fair inference here is that ... [these excuses] were nothing more than a bully's pretext for initiating an attack on an opponent who was clearly outclassed. Consideration of the larger context, the election campaign and the political split between two previously friendly men, puts the incident in its true light. As the Investigations Officer stated: 'This assault was not a spontaneous event but rather it was a set-up by Cherilla to attack a fellow Union officer who represented a different political slate.'

Ind.Admin.Dec. at 10–11 (quoting Inv.Off. Post–Hearing Reply Mem. at 3). Accordingly, the Independent Administrator found that the Investigations Officer had sustained his burden of showing "just cause"[1] for concluding that Mr. Cherilla assaulted Mr. Ogg in a politically motivated attack.

As a penalty for the Charge, the Independent Administrator found that Mr. Cherilla should be suspended from the IBT for five years. During this period, Mr. Cherilla may not hold Union office or draw money or compensation from the IBT or any IBT-affiliated entity. The Independent Administrator imposed such a penalty "to demonstrate that violent, strong-arm tactics will no longer be tolerated in this Union, especially in the context of a political race. IBT members must be free to engage in Local Union politics without fear of violence and intimidation." Ind.Admin.Dec. at 11.

In an effort to prevent further conflict, the Independent Administrator also directed that Mr. Cherilla not in any way harass, assault or threaten "the rights, employment, IBT membership, benefits or other interests of Ogg or any other person involved on behalf of Ogg." Ind.Admin.Dec. at 12. The Independent Administrator ordered Cherilla to instruct all Local 249 members, by written notice, not to retaliate against Ogg or those who acted on Ogg's behalf. Cherilla had to provide the Independent Administrator with a copy of this notice and an affidavit stating that it had

---

**1.** Paragraph F.12(C) of the Consent Decree mandates that the Independent Administrator must decide disciplinary hearings using a "just cause" standard.

been properly distributed. Moreover, the Independent Administrator barred Cherilla from participating in any Union or employment matter involving Ogg or those who acted on Ogg's behalf in this matter.

Furthermore, the Independent Administrator directed that during this five-year suspension, no further contributions from the IBT or any IBT-affiliated entity be made on Cherilla's behalf to any health, pension, welfare or other employee benefit plan. The Independent Administrator, however, permitted Cherilla to collect all interests vested up to and including the date of the commencement of his suspension. In addition, the Independent Administrator directed that no IBT-affiliated entity grant Mr. Cherilla a car allowance or provide him with car insurance during the suspension. Mr. Cherilla is, however, permitted to maintain whatever coverage he wishes through personal contributions. Finally, the Independent Administrator stayed his decision, except that portion concerning retaliation against Ogg, pending this Court's review of this matter.

Mr. Cherilla appeals to this Court the opinion of the Independent Administrator. This Court finds that the opinion of the Independent Administrator is fully supported by the evidence, and that Mr. Cherilla's arguments are completely without merit. Accordingly, the opinion of the Independent Administrator is affirmed in all respects.

## II. DISCUSSION

■ Cherilla objects to the Independent Administrator's assessment of the evidence in this matter. Specifically, Cherilla contends that the Independent Administrator: (1) failed to credit any testimony favorable to Cherilla; (2) relied on irrelevant facts, including arrests of Cherilla's that did not result in convictions; (3) did not have sufficient evidence before him to find that Cherilla's attack on Ogg resulted from political motivations; and (4) did not give appropriate weight to character evidence testimony given on Cherilla's behalf. "By making such an argument, [Cherilla] asks this Court to substitute its assessment of [the

credibility of evidence offered on Cherilla's behalf] for that of the Independent Administrator," who conducted the hearing and thus was in the best position to judge credibility. October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1133 (S.D.N.Y. 1991).

■ It is well settled that the findings of the Independent Administrator "are entitled to great deference." *United States v. Int'l Brotherhood of Teamsters*, 905 F.2d 610, 616 (2d Cir.1990), *aff'g* March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y. 1990). This Court will overturn findings when it determines that they are, on the basis of all the evidence, "arbitrary or capricious." *United States v. Int'l Brotherhood of Teamsters, supra*, 905 F.2d at 622; November 8, 1991 Memorandum & Order, *slip opinion*, at 4–5, 1991 WL 243268 (S.D.N.Y.1991); November 8, 1991 Memorandum & Order, *slip opinion*, at 7, 1991 WL 243292 (S.D.N.Y.1991); October 29, 1991 Opinion & Order, 776 F.Supp. 144, 152 (S.D.N.Y.1991); October 25, 1991 Order, *slip opinion*, at 4 (S.D.N.Y.1991); October 24, 1991 Opinion & Order, 777 F.Supp. 1133, 1136 (S.D.N.Y.1991); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1132 (S.D.N.Y.1991); October 11, 1991 Memorandum & Order, 777 F.Supp. 1127, 1128 (S.D.N.Y.1991); October 9, 1991 Memorandum & Order, 777 F.Supp. 1123, 1125 (S.D.N.Y.1991); August 14, 1991 Memorandum & Order, *slip opinion*, at 4 (S.D.N.Y.1991); July 31, 1991 Memorandum & Order, *slip opinion* at 3–4, 1991 WL 150226 (S.D.N.Y.1991); July 18, 1991 Memorandum & Order, *slip opinion* at 3–4, 1991 WL 136030 (S.D.N.Y.1991); July 16, 1991 Opinion & Order, *slip opinion*, at 3–4, 1991 WL 136029 (S.D.N.Y.1991); June 6, 1991 Opinion & Order, 775 F.Supp. 90, 93 (S.D.N.Y.1991); May 13, 1991 Memorandum & Order, 764 F.Supp. 817, 820–21 (S.D.N.Y.1991); May 9, 1991 Memorandum & Order, 764 F.Supp. 797, 800 (S.D.N.Y. 1991); May 6, 1991 Opinion & Order, 764 F.Supp. 787, 789 (S.D.N.Y.1991); December 27, 1990 Opinion & Order, 754 F.Supp. 333, 337 (S.D.N.Y.1990); September 18, 1990 Opinion & Order, 745 F.Supp. 189, 191–92

(S.D.N.Y.1990); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990); March 13, 1990 Opinion & Order, *supra*, 743 F.Supp. at 159–60, *aff'd*, 905 F.2d at 622; January 17, 1990 Opinion & Order, 728 F.Supp. 1032, 1045–57, *aff'd*, 907 F.2d 277 (2d Cir.1990); November 2, 1989 Memorandum & Order, 725 F.Supp. 162, 169 (S.D.N.Y.1989).

The Independent Administrator did not credit Cherilla's version of the confrontation. *See* Ind.Admin.Dec. at 8. Instead, the Independent Administrator credited Ogg's testimony, which is corroborated by two IBT employees, photographs of Ogg's condition after the incident, and Cherilla's own admission that his rendition of the facts cannot account for Ogg's injuries. In addition, Cherilla is an advanced practitioner of martial arts and fully capable of inflicting the type of injuries sustained by Ogg. The Independent Administrator also noted that "[i]t is unlikely that Ogg, who is 64 years old, would initiate a physical confrontation with a slightly younger man known to be an advanced practitioner of a deadly fighting art." Ind.Admin.Dec. at 8. The Independent Administrator's decision reveals that he carefully considered all the evidence in this case. The decision is amply supported by the evidence and is neither arbitrary or capricious.

■ Mr. Cherilla next argues that the Independent Administrator's decision and the Investigations Officer's case rested largely upon ex parte depositions, depositions taken in ancillary proceedings arising out of the Ogg–Cherilla confrontation, and arrests of Cherilla that did not result in convictions. Mr. Cherilla alleges that by relying on such evidence, and by not calling witnesses, the Investigations Officer failed to meet his burden of showing "just cause." Hearsay is admissible in IBT disciplinary proceedings if reliable. *See* Aug. 27, 1990 Memorandum & Order, 745 F.Supp. 908, 914–15 (S.D.N.Y.1990), *aff'd*, *United States v. IBT*, 941 F.2d 1292, 1297 (2d Cir.1991). The Independent Administrator carefully considered the depositions in the instant case and found them reliable because they corroborated one another and

were supported by photographs of Ogg's injuries, which rendered Cherilla's account implausible. Indeed, Cherilla admitted that his version of the conflict does not account for Ogg's injuries. An examination of the depositions, in light of all other evidence in this matter, reveals that they are reliable. Accordingly, this Court rejects Cherilla's argument.

■ Cherilla also argues that his conduct did not bring reproach upon the union, in violation of Article 2, section 2(a). Essentially, Cherilla proffers an Article XIX, section 3(d) defense, under which Cherilla claims that he could not have brought reproach upon the union if the "membership knew of the incident at issue but voted Cherilla into office nonetheless." Ind.Admin.Dec. at 9. To successfully assert a section 3(d) defense, Cherilla must prove that the members conclusively knew that Cherilla was "actually guilty of the conduct charged" when they elected him to his current term of office. March 13, 1990 Opinion & Order, 743 F.Supp. 155, 165–66 (S.D.N.Y.), *aff'd*, 905 F.2d 610 (2d Cir.1990); November 2, 1989 Memorandum & Order, 725 F.Supp. 162, 165 (S.D.N.Y.1990). The Independent Administrator found, and this Court agrees, that Cherilla cannot meet this burden. Cherilla represented his confrontation with Ogg as a mere shoving match, consistently denying the brutality of the attack and that his conduct brought reproach upon the union. Section 3(d) does not shield an officer from a charge the officer denies. *See* 743 F.Supp. at 166; 725 F.Supp. at 165. Accordingly, Cherilla's section 3(d) defense is without merit.

■ Finally, Cherilla argues that the penalty imposed against him is unwarranted given the facts of the case and in light of sanctions imposed in other cases. This Court has imposed significant suspensions for IBT members who threatened physical or economic harm. *See* October 24, 1991 Opinion & Order, 777 F.Supp. at 1138. Cherilla, of course, did not stop at mere threats; he violently assaulted Ogg. Cherilla's conduct warrants nothing less than permanent suspension from the IBT. Ac-

cordingly, this Court directs that Cherilla is permanently suspended from the IBT.

This Court has on several occasions imposed such a sanction. *See* November 8, 1991, *slip opinion,* at 6 (S.D.N.Y.1991); October 16, 1991, 777 F.Supp. at 1131 (S.D.N.Y.1991); October 11, 1991 Memorandum & Order, 777 F.Supp. at 1127 (S.D.N.Y.1991); July 31, 1991 Memorandum & Order, *slip opinion,* at 2, 1991 WL 150226 (S.D.N.Y.1991); July 18, 1991 Memorandum & Order, *slip opinion,* at 2-3, 1991 WL 136030 (S.D.N.Y.1991); July 16, 1991 Memorandum & Order, *slip opinion,* 1991 WL 136029 (S.D.N.Y.1991). Furthermore, permanent suspension is appropriate in this case because "[t]his attack is precisely the kind of strong-arm tactic that the Court-appointed officers are charged with eradicating. Cherilla's attack on Ogg sends a message to IBT members that political expression or challenge is dangerous. As such, it has a chilling effect on the free exercise of political rights guaranteed to all IBT members under federal labor law as well as the Consent Decree." Ind.Admin.Dec. at 11. This Court will not countenance politically motivated violence. Those who consider violence an acceptable form of political expression have no place in this Union.

## III. CONCLUSION

IT IS HEREBY ORDERED that Cherilla's objections to the Independent Administrator's opinion are denied;

IT IS FURTHER ORDERED that the opinion of the Independent Administrator is modified to impose on Cherilla a lifetime suspension from the IBT, and as so modified, the opinion of the Independent Administrator is affirmed;

IT IS FURTHER ORDERED that the stay of penalties imposed on Cherilla by the Independent Administrator is dissolved, effective immediately.

SO ORDERED.