UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION CXI OF the INDEPENDENT ADMINISTRATOR.

No. 88 Civ. 4486 (DNE).

United States District Court, S.D. New York.

June 10, 1993.

Charles M. Carberry, Investigations Officer of the Intern. Broth. of Teamsters, (Jeffrey S. Tolk, of counsel);

Roger S. Hayes, U.S. Atty. for the S.D. of N.Y. (Christine H. Chung, Asst. U.S. Atty., of counsel), for U.S.

Baptiste & Wilder, P.C., Washington, DC (Robert M. Baptiste, Susan Boyle, of counsel), for respondents.

### MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America (the "Government") against defendants International Brotherhood of Teamsters (the "IBT" or the "Union") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The Consent De-

cree provides for three Court-appointed officials: the Independent Administrator to oversee the Consent Decree's remedial provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to oversee the electoral process that culminated in the 1991 election for International Officers. The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election and disciplinary provisions.

This Memorandum & Order represents the final resolution of all issues presented by Applications XCIX and CXI of the Independent Administrator concerning Respondents John T. Burke, Jr., President of IBT Local 868 and 917; Harold Wolchok, Secretary–Treasurer of IBT Local 868 and 917; Mario Abrego, Vice President of IBT Local 917 and Trustee of IBT Local 868; Robert Ottman, Trustee of IBT Local 917 and business agent of IBT Local 868; Langston McKay, Recording Secretary of IBT Local 917 and business agent for Local 868; Walter Cahill, Trustee of IBT Local 868 and 917; Saul Brechner, Vice President of IBT Local 868; and, Walter Simmons, Trustee of Local 917 and business agent for Local 868. In Application XCIX of the Independent Administrator, the first Application in connection with this matter, this Court issued an Opinion & Order, dated March 5, 1993, that affirmed in part, and reversed and remanded in part, the decision of the Independent Administrator, 817 F.Supp. 337. Application XCIX presented for this Court's review the decision of the Independent Administrator finding that the Investigations Officer had proven charges filed against Respondents. This Court affirmed the Independent Administrator's finding that the Investigations Officer had proven that Respondents breached their fiduciary duties to the members of IBT Locals 868 and

917 in violation of Article II, Section 2(a) and Article XIX, Section 6(b) of the IBT Constitution[1] by executing a scheme, under the guise of an associate membership program, to enrich themselves (the "Associate Membership Program Charge").[2] The penalty imposed on two of the respondents, Mr. Burke and Mr. Wolchok, was also affirmed. However, this Court vacated and remanded for reconsideration the penalty imposed by the Independent Administrator on Respondents Abrego, Ottman, McKay, Cahill, Brechner and Simmons. *See* March 5, 1993 Opinion & Order at 24. The Court stated that:

> Both this Court and the Second Circuit have held that the Independent Administrator, who presides over disciplinary hearings pursuant to the Consent Decree, is best situated to determine and fix the penalty to be imposed upon IBT members who violate the Consent Decree's disciplinary provisions. *See United States v. IBT*, [978 F.2d 68, 72 (2nd Cir.1992)]. In doing so, he is entitled to great deference. *See United States v. IBT*, [981 F.2d 1362, 1370 (2nd Cir.1992)]; *United States v. IBT*, [978 F.2d 68, 72]. This is a matter of critical importance. The Independent Administrator, a former federal district judge, conducts the hearings and thus is best equipped to evaluate the demeanor, credibility and, ultimately, the culpability, of those who appear before him. *See id.;* Feb. 9, 1993 Opinion & Order, *slip op.*, at 47 (S.D.N.Y.1993). It follows that he is also uniquely situated to evaluate what weight to accord various aggravating and mitigating factors in a given case, and thus, to chose an appropriate penalty.

> An example of the Independent Administrator's great discretion in this area is found in *United States v. IBT* ("San-

1. All references herein are to the 1986 IBT Constitution under which Respondents were charged.

2. In addition, the Court found that the Investigations Officer had proven additional charges against Messrs. Burke and Wolchok, including, that: Mr. Burke and Mr. Wolchok breached their fiduciary duties to the Union and violated 29 U.S.C. § 503(a) in connection with an illegal loan to Mr. Burke from Local 917; Mr. Burke and Mr. Wolchok breached their fiduciary duties

to the Union and violated Article XIX, Section 6(b)(3) of the IBT Constitution, by embezzling more than $6,000 of Local 917's funds via a retroactive increase of Mr. Burke's salary; and, Mr. Wolchok brought reproach upon the IBT in violation of Article II, Section 2(a) and Article XIX, Section 6(b) of the IBT Constitution by submitting false and dishonest information in connection with an IBT audit of Local 917's books.

*sone* "), [964 F.2d 180, 184–85 (2nd Cir. 1992) ]. In *Sansone,* the Second Circuit refused to overturn the Independent Administrator's decision to permanently bar the President of IBT Local 682, Robert S. Sansone, from holding Union office, even though the Court of Appeals indicated that it might have reached a different result. *See id.* at 184. Mr. Sansone had argued that the penalty imposed was overly harsh—especially given that other IBT members had received more lenient penalties for arguably similar conduct. Nonetheless, the penalty imposed withstood scrutiny in this Court and the Second Circuit because, although the penalty *was* more severe than that which had been imposed on individuals found guilty of similar wrongdoing, the Independent Administrator, who observed the defendant's demeanor and was able to best assess the corpus of evidence presented, determined that "the punishment fit the crime." As the Second Circuit stated, "the apparent discrepancy between the penalty imposed here and those imposed in other cases does not inexorably compel the conclusion that the Independent Administrator acted arbitrarily or capriciously." *Id.* at 184.

Thus, Respondents' claim that the penalties imposed in the instant matter are arbitrary and capricious because they are "severe" or "harsh" is unpersuasive. Yet, the instant matter deserves a second look. While other disciplined IBT members have challenged penalties based on an analysis of penalties imposed in unrelated matters, Respondents in this case have challenged their penalties in light of the conduct and penalties of individuals involved in the same matter. In other words, there exists a common baseline. While Mr. Sansone, for instance, cited penalties imposed in wholly unrelated matters, Messrs. Abrego, Ottman, McKay, Cahill, Brechner, and Simmons raise questions of proportionality in light of the penalties imposed on Mr. Burke and Mr. Wolchok. Not only is there such a common baseline here, but all Respondents enjoy similar mitigating factors. Thus, they ostensibly differ only in their degree of culpability. In light of the fact the Messrs. Abrego, Ottman, McKay,

Cahill, Brechner, and Simmons appear to be less culpable than Mr. Burke and Mr. Wolchok, it is not clear why identical sanctions have been imposed on all Respondents. A group of respondents in the same matter, with similar mitigating circumstances but differing degrees of culpability, received the same penalty. In the absence of further explanation, this Court can only conclude that the sanctions imposed on Messrs. Abrego, Ottman, McKay, Cahill, Brechner, and Simmons are arbitrary and capricious.

On remand, the Independent Administrator may conclude that, in light of the seemingly greater wrongdoing perpetrated by Mr. Burke and Mr. Wolchok, Messrs. Abrego, Ottman, McKay, Cahill, Brechner, and Simmons should be accorded a more lenient penalty. Alternatively, the Independent Administrator may conclude that, in light of the level of culpability of each of the Respondents and other mitigating evidence, a uniform penalty is warranted. On remand, the Independent Administrator shall reconsider the penalty to be imposed on Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons in light of this opinion.

March 5, 1993 Opinion & Order, at 21–4.

On remand, the Independent Administrator accepted further submissions from Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons and reconsidered the penalty to be imposed on these six Respondents. The Independent Administrator found that Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons should receive a lesser penalty than that which was imposed on Respondents Burke and Wolchok. Accordingly, the Independent Administrator ordered that

[f]or a period of two years, Abrego, Ottman, McKay, Cahill, Brechner and Simmons are barred from holding, or drawing any compensation from, any IBT-affiliated officer or trusteeship positions. These six Respondents may, however, retain their IBT membership.

During [this] two-year period ... they shall also be barred from working, in any capacity, with IBT-affiliated entities....

Without such a restriction, I would be inviting IBT-affiliated entities to dole out patronage positions to members upon whom I have imposed employment disabilities.

Ind.Admin.Dec. at 4–5. In addition, the Independent Administrator ordered that any contributions made by any IBT-affiliated entity to sustain benefits on behalf Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons[3] as a result of their having served as officers or trustees of IBT-affiliated entities cease during the two-year disability period. *Id.* at 5–6. Finally, the Independent Administrator prohibited these six Respondents from receiving reimbursement for legal expenses incurred in connection with this disciplinary action. *Id.* at 6. Application CXI presents for this Court's review the modified penalty that the Independent Administrator has imposed on Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons.

This Court repeatedly has recognized that, in reviewing decisions of the Independent Administrator, the findings of the Independent Administrator "are entitled to great deference." *United States v. IBT*, 905 F.2d 610, 616 (2d Cir.1990), *aff'g* March 13, 1990 Opinion & Order, 743 F.Supp. 155 (S.D.N.Y.1990). This Court will overturn the findings of the Independent Administrator when it determines that they are, on the basis of all the evidence, "arbitrary or capricious." *United States v. IBT*, 964 F.2d 1308, 1312, 1315 (2d Cir.1992); August 27, 1990 Opinion & Order, 745 F.Supp. 908, 911 (S.D.N.Y.1990), *aff'd*, 941 F.2d 1292 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991); March 13, 1990 Opinion & Order, 743 F.Supp. 155, 165 (S.D.N.Y.1990), *aff'd*, 905 F.2d 610 (2d Cir.1990); *see also* July 14, 1992 Opinion & Order, *slip op.*, at 10–12 (S.D.N.Y. 1992); October 16, 1991 Memorandum & Order, 777 F.Supp. 1130, 1132 (S.D.N.Y.1991), *aff'd*, 964 F.2d 1308 (2d Cir.1992); October 11, 1991 Memorandum & Order, 777 F.Supp. 1127, 1128 (S.D.N.Y.1991), *aff'd*, 956 F.2d 1161 (2d Cir.1992).

■ Further, it is well settled that the Independent Administrator is vested with broad discretion to fix an appropriate penalty once disciplinary charges are proven. *See United States v. IBT*, 981 F.2d 1362, 1370 (2d Cir.1992) (refusing to overturn Independent Administrator's decision, even though court itself may have imposed a less severe sanction). As the Second Circuit has stated, "[t]he experienced independent administrator—himself a former federal district judge—heard the witnesses and fixed a penalty. On this record there is no basis for finding the penalty chosen by the administrator was either arbitrary or capricious." *United States v. IBT*, 978 F.2d 68, 72 (2d Cir.1992). Because he conducts the disciplinary hearings, the Independent Administrator is best equipped to evaluate the demeanor, credibility and, ultimately, the culpability, of those who appear before him. *See* Feb. 9, 1993 Opinion & Order, *slip op.*, at 47 (S.D.N.Y.1993). It follows that he also is best situated to determine and fix the penalty to be imposed upon IBT members who violate the Consent Decree's disciplinary provisions. *See United States v. IBT*, 978 F.2d 68, 72. In doing so, he is entitled to great deference. *See United States v. IBT*, 981 F.2d 1362, 1370; *United States v. IBT*, 978 F.2d 68, 72.

■ With these principles in mind, I now turn to the Supplemental Decision of the Independent Administrator, which is before this Court as Application CXI. Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons argue that the "uniformity and severity" of the modified penalty renders it arbitrary. *Respondents' Objections to Application CXI of the Independent Administrator,* at 1. Respondents in essence argue that uniform penalties are *per se* arbitrary because each Respondent must derive a different benefit from, and hence have a different level of culpability in relation to, any violation of the Consent Decree's disciplinary provisions. This argument is without merit.

This Court earlier affirmed the Independent Administrator's determination that the Investigations Officer had sustained his bur-

---

**3.** Consistent with prior rulings in this case, the Independent Administrator did not alienate any vested benefits of Respondents Abrego, Ottman, McKay, Cahill, Brechner, or Simmons.

den of proving the Associate Membership Program Charge against Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons. *See* March 5, 1993 Opinion & Order, at 10–12. Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons thus breached their fiduciary duties to the members of IBT Locals 868 and 917 in violation of Article II, Section 2(a) and Article XIX, Section 6(b) of the IBT Constitution by executing a scheme, under the guise of an associate membership program, to enrich themselves. This is sanctionable conduct under the Consent Decree.

Only after carefully considering each Respondent's culpability, as well as the seriousness of their infraction, did the Independent Administrator impose a common penalty upon these six Respondents. Moreover, before even reviewing this matter, the Independent Administrator invited and received further submissions from these six Respondents in order to ensure the imposition of an appropriate sanction. After considering this material, the Independent Administrator reduced the penalty originally imposed. This Court finds that the penalty imposed on Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons by the Independent Administrator is the minimum sanction appropriate in light of Respondents' wrongdoing.

Respondents' assertion that those Respondents who gained the most from the impermissible conduct encompassed in the Associate Membership Charge benefitted from the imposition of this minimum sanction does not render the penalty arbitrary and capricious. Because Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons each engaged in similar conduct and have been disciplined under an identical charge, a uniform penalty is warranted. The fact that some Respondents may have received a greater benefit from their impermissible conduct than did others in no way obviates the propriety of imposing uniform sanctions on all six.

The Independent Administrator carefully considered the evidence presented and exercised his discretion in formulating a penalty for Respondents' wrongful conduct. On this record, the Independent Administrator's decision is not arbitrary or capricious. The penalty imposed on Respondents Abrego, Ottman, McKay, Cahill, Brechner, and Simmons is affirmed.

### CONCLUSION

IT IS HEREBY ORDERED that Mario Abrego's, Robert Ottman's, Langston McKay's, Walter Cahill's, Saul Brechner's, and Walter Simmons' objections to the Independent Administrator's Supplemental Decision are DENIED; and

IT IS FURTHER ORDERED that, effective immediately, the stay of penalties imposed by the Independent Administrator is dissolved.

SO ORDERED.